UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**PHILLIP MOCEK,**                            )
                                              )
                 Plaintiff,                   )
                                              )
       v.                                     )   Case No. 1:11-cv-1009-BB/KBM
                                              )
**CITY OF ALBUQUERQUE, ET AL.,**              )
                                              )
                                              )
                 Defendants.                  )
                                              )

## REPLY TO PLAINTIFF'S OPPOSITION TO THE INDIVIDUAL FEDERAL DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

The constitutional claims against the individual federal defendants, three transportation security officers (TSOs), must be dismissed because the allegations in the complaint are insufficient to plausibly give rise to the inference of unconstitutional conduct on the part of these federal employees. The Plaintiff does not dispute that it is reasonable for TSOs to limit First Amendment activity at a nonpublic forum such as an airport security checkpoint, when the person conducting the activity is disrupting the through-put of passengers. Instead, the Plaintiff claims that he was not disruptive. However, his own complaint indicates that he intentionally failed to comply with screening procedures by refusing to provide his identification (I.D.), knowing that this would cause a "hassle" and a "delay." *Comp.* ¶ 29. He subsequently refused the TSO defendants' request to cease videotaping alternative screening measures required to be employed to verify his identity. The Plaintiff's actions therefore required the attention of

numerous Transportation Security Administration (TSA) employees, the very definition of causing a disruption.

To the extent the Plaintiff is claiming his First Amendment right to video record TSOs conducting alternative screening procedures at a security check point was violated by their requests that he cease recording, this allegation also fails to state a claim because the Plaintiff admits he disregarded the TSOs' request and kept recording. In addition, it was not clearly established that the Plaintiff had a First Amendment right to video record TSOs conducting alternative screening procedures to verify his identity at a security checkpoint.

The Plaintiff's Fourth Amendment claim likewise fails. First, because the Plaintiff has not alleged that the TSOs caused or participated in his arrest or the subsequent search, and alleged mishandling, of his property. Second, because the TSO defendants' actions, as described in the complaint, do not demonstrate a violation of the Plaintiff's clearly established Fourth Amendment rights.

## ARGUMENT

### I.  The Complaint Fails to Allege a First Amendment Violation

    A.  <u>Plaintiff's Complaint Describes a Reasonable Response by the Individual TSA Defendants to Disruptive Activity in the Airport Security Screening Area, and Fails to State a Plausible Claim of a First Amendment Violation</u>

The Plaintiff does not dispute, and therefore concedes, the majority of the TSO defendants' position that their response to the Plaintiff's actions was reasonable and therefore did not violate the First Amendment. The Plaintiff does not dispute that airports such as Albuquerque International Sunport are nonpublic fora and that restrictions on speech at airport terminals "need only be reasonable." *See Int'l Soc. For Krishna Consciousness, Inc. v. Lee*, 505

U.S. 672, 683 (1992).[1] In addition, he does not claim in his Opposition that TSO requests that he stop filming at the security checkpoint were viewpoint discrimination. Nor does the Plaintiff dispute that it would be reasonable for TSOs to limit First Amendment related activity of a passenger at a security checkpoint if that passenger was disrupting the prompt screening of other passengers. Instead, the Plaintiff argues that he was not disruptive when he intentionally refused to provide I.D. at the security checkpoint and then refused the TSOs' requests to cease video recording the alternate procedures used to screen passengers without I.D. However, the facts as taken from the Plaintiff's complaint clearly demonstrate that the Plaintiff's actions were disruptive and caused the TSO defendants to divert considerable resources to deal with the Plaintiff's attempt to challenge the system.

The Plaintiff admits he initially provided his boarding pass to a TSO Greg Martinez, but when he refused to provide I.D. he was referred to TSO Breedon for additional screening. *Comp.* ¶¶ 44-45. TSO Breedon then contacted TSA's Security Operations Center and contacted TSO Schreiner to request the assistance of a Behavior Detection Officer. *Comp.* ¶ 45 and Defense Exhibit (DEX) 1. Therefore, before the Plaintiff even began video recording, his activities required the involvement of at least five TSA employees, instead of the one normally required. As a result of his videotaping, TSO Schreiner and TSO Romero responded to TSO Breedon's request for assistance. *Comp.* ¶ 47. Had the Plaintiff not challenged the security

---

[1] The Plaintiff contends that he was in a publically accessible part of the airport. Opposition at 8. However, the holding of *Krishna Consciousness*, which was decided at a time when passengers did not need a boarding pass to pass through to the secure area of the airport, is in no way limited to non-publically accessible parts of the airport. *See generally, Krishna Consciousness, Inc.*, 505 U.S. 672. Further, the Plaintiff's own complaint establishes that he was not filming the screening checkpoint from outside of the checkpoint, but had gotten to the front of the line, had engaged with the TSO responsible for checking travel documents, and had been referred to another TSO in order to undergo an alternative screening process. *See Comp.* ¶¶ 44-5. Thus, when the Plaintiff started filming, he was well within the confines of the security screening checkpoint, a clearly nonpublic forum under *Krishna Consciousness.*

system he would have passed through the security checkpoint and these six TSA employees could have been performing other duties. Instead, they had to contend with, and focus their attention on, one disruptive individual.

The Plaintiff's only support for his conclusory assertion that his actions were not disruptive was that he "used a calm, quiet tone of voice" and other passengers walked "by without hesitation." Opposition at 3. However, a loud tone of voice that brings the Plaintiff to the attention of other passengers is not the only way to disrupt the screening process. By intentionally challenging TSA security procedures the Plaintiff became a security concern. This concern was heightened when the Plaintiff began videotaping TSA procedures for dealing with a passenger who refused to provide I.D. In this case, the Plaintiff disrupted the process of having passengers pass quickly through the security checkpoint while ensuring they are not a threat to air traffic and other passengers because his actions required the involvement of multiple TSA employees, who should have been performing other duties.

Given TSA's mission to identify dangerous individuals or materials at the security checkpoint and the importance of avoiding disturbances and distractions in the performance of this mission, it is reasonable for TSOs to ask disruptive or suspicious passengers to cease filming at the checkpoint and, if necessary, refer them to law enforcement officers quickly for further inquiry.

B.      The TSA Defendants Did Not Cause the Plaintiff's Arrest and the Other Adverse
        Actions the Plaintiff Alleges in Plaintiff's Count I

The Plaintiff's Opposition admits that the "local police defendants conducted the arrest and seizure." Opposition at 5. Therefore, it is clear from this language and the complaint that the Plaintiff has failed to meet the second prong of First Amendment retaliation, that the TSOs' "actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness

4

from continuing to engage in that activity." *Klen v. City of Loveland*, 661 F.3d 498, 508 (10th Cir.

2001). The complaint demonstrates that the TSA defendants were not responsible for the

complained-of injuries in Count I, namely the Plaintiff's arrest, the handling of his property, or

the filing of criminal charges. *Comp.* ¶¶ 49-67, 83. *See also* DEX 2 ("Officer Dilley moved right

in front of the [Plaintiff] and took control of the situation . . . .") Upon their arrival, the local

police did not intend to arrest the Plaintiff, and it is clear from the complaint that the police did

not decide to arrest the Plaintiff until he refused to provide <u>them</u> with I.D. *Comp.* ¶ 54.

> C.     <u>The Plaintiff Was Not Subjected to Unconstitutional Conduct When the TSO
> Defendants Requested He Stop Video Recording the Alternative Screening
> Process Because the Plaintiff Ignored the Requests and Continued Recording</u>

Perhaps because there is no causal connection for First Amendment retaliation purposes

between TSO Breedon's request for police assistance, and the arrest of the Plaintiff after he

refused the police order to provide his I.D., the Plaintiff's Opposition does not focus on the

adverse actions listed in the First Amendment retaliation claim found in his Count I. *Comp.* ¶ 93.

Instead, the Plaintiff now argues that interference with his "right to gather information," a right

not mentioned in his complaint, is the actual First Amendment harm caused by the TSO

defendants. Opposition at 6-9. The Plaintiff claims that TSOs Breedon and Romero's repeated

requests that the Plaintiff cease videotaping TSA procedures for screening passengers who, like

the Plaintiff, fail to provide I.D. at a security checkpoint violated his First Amendment rights.

Opposition at 8-9. However, this new claim also fails to state a cause of action because the

Plaintiff simply refused the TSO defendants' requests and continued recording. *Comp.* ¶¶ 46, 48.

*See also* Opposition at 21("He was asked to stop recording, and he did not stop."). In fact, the

Plaintiff's recording continued beyond his interaction with the TSO defendants, to include his

interaction with and arrest by the local police. Comp. ¶¶ 52, 87. Therefore, even assuming that the

Plaintiff had a right to "information gathering" by video recording at a TSA security check point, his right was not interfered with by the TSO defendants in this case, because he continued recording despite requests that he stop.

**II.      The Complaint Fails to Allege a Fourth Amendment Violation**

The Plaintiff argues that once the TSOs requested police assistance they became "responsible for all the harm that follow[ed]." Opposition at 16. This contention is simply wrong. Under the Plaintiff's theory of causation, anyone who contacts the police is then responsible for allegations of police misconduct. However, the Supreme Court has made it clear that in a *Bivens* case, personal participation in the alleged misconduct is necessary, as "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676. The complaint here establishes that the decision to arrest the Plaintiff was the local police's alone and that this decision did not rest on information provided by the TSOs.

Specifically, the complaint alleges that the local police did not initially plan to arrest the plaintiff in response to the TSOs' call for their assistance. *Comp.* ¶¶ 51-54. They gave the Plaintiff several opportunities to acquiesce to the TSOs' requests. *Id.* Even after the Plaintiff's refusal, the police indicated they planned to simply escort him from the airport. *Id.* at ¶ 53. It was not until he refused the police request to provide I.D. that the Plaintiff was arrested. *Id.* at ¶ 54. The complaint makes it clear that Police Officer Dilley made the decision to arrest the Plaintiff. *Id.* at ¶¶ 54-5. ("Dilley then changed his mind about escorting Mocek out of the airport, stating that he was going to need to see Mocek's I.D. or else he was going to arrest Mocek for concealing identity.") The Plaintiff's complaint does not indicate that the TSO defendants were involved in the decision

to arrest the Plaintiff or that the Plaintiff was arrested for video recording the TSA security screening process. On the contrary, the Complaint supports the TSO's position that they were not involved in the decision to arrest the Plaintiff.[2] *Comp.* ¶¶ 51-5. *See also* DEX 2 ("as the [police] officers took care of the situation" TSO Schreiner responded to questions from the Plaintiff's traveling companion). In addition, the complaint indicates that the sole reason for the initial arrest of the plaintiff was because he refused to comply with the police request for his I.D. *Comp.* ¶ 54. The Plaintiff's Opposition likewise concedes that the local police did not initially intend to arrest the Plaintiff in response to the TSOs' call for assistance. Opposition at 9, 16. Because the Plaintiff's complaint does not indicate that the TSO defendants were involved in the decision to arrest the Plaintiff or that the Plaintiff was arrested for video recording the TSA security screening process, the complaint fails to state a Fourth Amendment claim.

Just as in the case of the director of security for a school system who contacted the police in *Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012), the TSO defendants were not the proximate cause of the Plaintiff's arrest. As in *Green*, the TSOs did no more than request police assistance, explain their reason for contacting the police, and step aside while the police determined what action to take. *Id.* The police then decided to arrest the Plaintiff when he failed to provide his I.D. even to them. "Proximate cause refers to the basic requirement that before recovery is allowed in tort, there must be 'some direct relation between the injury asserted and the injurious conduct alleged.' It excludes from the scope of liability injuries that are 'too remote,'

---

[2] The complaint makes it clear that the Plaintiff was arrested for failing to provide I.D. as requested by the police. *Comp.* ¶ 54. There are no facts in the complaint that support any contention that statements by the TSO defendants somehow influenced the police decision that there was probable cause to arrest the Plaintiff for failing to provide I.D. The Plaintiff was involved in a police investigation, his I.D. was requested by the police and he refused to produce his I.D. *See Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995) ("under New Mexico law, one commits a misdemeanor offense by concealing his identity" if done "with intent to hinder or interrupt any public officer or any other person in a legal performance of his duty.")

'purely contingent,' or 'indirect.'" *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2645 (2011)

*quoting Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). "Recognizing that liability

must not attach to 'every conceivable harm that can be traced to alleged wrongdoing,' proximate

cause requires a 'causal connection between the wrong and the injury.'"*McBride*, 131 S. Ct. at

2645 *quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 533 n.26

(1983). In this case the TSO defendants deny that contacting the police was wrong, but even if it

was, the contact did not cause the arrest and is too remote from the arrest to be the proximate

cause of the police actions. Because the police did not rely on information supplied by the TSO

defendants' in making a decision to arrest the Plaintiff, the Fourth Amendment claims against the

TSOs must be dismissed.

### III.  The Complaint Fails to Allege a Violation of a Clearly Established Right

A.    <u>The Plaintiff Has Not Adequately Alleged A Plausible Claim Of A Clearly
Established Violation Of The First Amendment</u>

The Plaintiff's opposition does not cite any case law directly addressing the factual

scenario facing the three TSA defendants. Instead, the Plaintiff attempts to define the right at

issue in general terms that were not included in his complaint, the right to engage in information

gathering. Opposition at 10. Although qualified immunity is an objective standard, the qualified

immunity inquiry is still "fact specific," *Anderson v. Creighton*, 483 U.S. 635, 641 (1987), and

"must be undertaken in light of the specific context of the case, not as a broad general

proposition." *Saucier v. Katz,* 533 U.S. 194, 201 (2001). *See also Ashcroft v. Al-Kidd,* 131 S. Ct.

2074, 2084 (2011) ("We have repeatedly told courts-and the Ninth Circuit in particular, *see*

*Brosseau v. Haugen*, 543 U.S. 194, 198-199, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (*per*

*curiam*) – not to define clearly established law at a high level of generality."). This rule takes

into account one of the fundamental purposes of qualified immunity, which is to bar liability

when it would be "difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Saucier*, 533 U.S. at 205. Therefore, the Plaintiff's attempt to define the right at issue in general terms goes against Supreme Court precedent and the core purposes of the qualified immunity defense.

Because the Plaintiff's Opposition incorrectly defined the right at issue in very general terms, the Plaintiff has failed to provide any justification for analogizing the facts presented by his complaint with cases that discuss videotaping police activities in public places. The Plaintiff does not dispute that the TSO defendants are not law enforcement officers. Nor does he dispute that airport security checkpoints are not public fora and First Amendment activity at such checkpoints is subject to reasonable restrictions. The context of the situation at issue is very different than a bystander video recording police activity in a public park from a distance as in *Glik v. Cunniffe*, 655 F.3d 78, 82-84 (1st Cir. 2011). Because there are no cases establishing a right to film screening procedures at an airport security checkpoint while undergoing screening, the right is not clearly established and qualified immunity is appropriate.

Even if the alleged right to film police activities at a distance in a public space was relevant to this case, as explained in the TSA defendants' initial memorandum, that issue is unsettled. Since there is no Supreme Court or Tenth Circuit decision on point, and there is a split in the circuit courts that have considered the issue, qualified immunity is appropriate. *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010). The Plaintiff's Opposition does exactly what the Supreme Court warned against in the qualified immunity context. The Plaintiff argues that the First and Eleventh Circuit cases (*Gilk* and *Smith*) on the issue are correct and the Third and Fourth Circuit cases (*Kelly* and *Szymecki*) that indicate there is no clearly established right to record police activity in public places "have also been both distinguished and

disregarded as wrongly decided."[3] Opposition at 12 n.5. The Plaintiff expects the TSO

defendants to make on the spot decisions upon which judges, at both the circuit and district court

level, with the luxury of time to research, disagree. Fortunately the Supreme Court does not hold

government employees to this impossible standard. S*ee Wilson v. Layne*, 526 U.S. 603, 618

(1999) ("If judges thus disagree on a constitutional question, it is unfair to subject police to

money damages for picking the losing side of the controversy.")[4]

The Plaintiff's contention, moreover, that *Kelly v. Borough of Carlisle*, 622 F.3d 248, 262

(3rd Cir. 2010) "acknowledged that there is a 'broad right to videotape police,' narrowed only by

the qualification that 'videotaping without an expressive purpose may not be protected'" is

wrong and takes the Third Circuit's position completely out of context. Opposition at 12.  The

Third Circuit actually said:

> Although *Smith* and *Robinson* announce a broad right to videotape police, other cases
> suggest a narrower right. *Gilles* and *Pomykacz* imply that videotaping without an
> expressive purpose may not be protected, and in *Whiteland Woods* we denied a right to
> videotape a public meeting.  Thus, the cases addressing the right of access to information
> and the right of free expression do not provide a clear rule regarding First Amendment
> rights to obtain information by videotaping under the circumstances presented here.

---

[3]  Plaintiff's opposition does not even mention the district court cases cited in support of the TSO
defendants' motion to dismiss. Memorandum at 22. These cases, which also held that there is no
clearly established right to videotape police actions in public places provide further support that
the law is unsettled in this area. The Opposition does cite *Fordyce v. City of Seattle*, 55 F.3d 436
(9th Cir. 1995) a case involving an alleged journalist's arrest for filming a protest on the streets of
Seattle. Although this case does mention a First Amendment right to film matters of public
interest, it contains no analysis of this issue. *Id.* at 439. Likewise, in *Gilles v. Davis*, the court
only indicated that videotaping police on public property "may be protected activity." 427 F.3d
197, 212 n.14 (3d Cir. 2005) (emphasis added).

[4]  The Plaintiff also contends, with no case support, that because the law has become less clear
recently, the Court should hold that the right the Plaintiff invokes was clearly established at the
time in question. Opposition at 12 n.5. However, cases post-dating the challenged conduct are
relevant to the issue of qualified immunity if they reflect the "uncertain state of the law" at the
relevant point in time. *Bame v. Dillard*, 637 F.3d 380, 387-8 (D.C. Cir. 2011).

*Kelly*, 622 F.3d at 262. Despite the Plaintiff's contention otherwise, this paragraph demonstrates that the Third Circuit believes that there is a split in circuits and differing views among the district courts concerning the right to videotape police officers in public. This position is fully consistent, and in fact supports the TSO defendants' position that the law concerning videotaping police officers in public, to the extent that situation is analogous to the facts presented here, was not clearly established in the Tenth Circuit at the time of the incident.

The Plaintiff's assertion that agency policy concerning photography at security checkpoints precludes qualified immunity is also incorrect. Opposition at 10, 14, 20-21. "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984). Therefore, even if the Plaintiff did correctly discern TSA policy based on his interpretation of blogs and e-mail exchanges, that policy does not create a clearly established right to videotape TSA officers and procedures at a security checkpoint. *See Herring v. Keenan*, 218 F.3d 1171, 1180 (10th Cir. 2000) (holding that probation officer's disclosure to probationer's sister and employer of his HIV status violated internal policy, but that violation of policy did not make disclosure a violation of constitutional right). For a right to be recognized as a clearly established constitutional right, the Plaintiff must demonstrate that there is a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation omitted). The Plaintiff has failed to meet this burden.

B.     The Plaintiff's Allegations Do Not Demonstrate A Violation of Clearly
       Established Law Under the Fourth Amendment

The Plaintiff has also failed to meet his burden of demonstrating that the TSO defendants,

by requesting police assistance, violated a clearly established right under the Fourth Amendment

and are therefore liable for allegations of police misconduct. The Plaintiff provides no case

support for the assertion that after requesting police assistance, the TSO defendants "are

responsible for all the harm that follows." Opposition at 16. Nor has he provided any case law

involving non-law enforcement personnel who requested the assistance of law enforcement

personnel, being found liable for the alleged constitutional violations of the law enforcement

personnel. Courts that have considered the issue have found no constitutional violation when the

police make their own independent decision to arrest or search.  See *Green*, 676 F.3d at 755;

*Tobey v. Napolitano*, 808 F.Supp. 2d 830, 850 (E.D. Va. 2011). Moreover, as discussed above,

the TSOs did not arrest the Plaintiff and the complaint makes clear that the police's decision to

arrest the Plaintiff was not based on any information provided by the TSOs.

**IV.     The Plaintiff is Not Entitled to Declaratory Relief Because His Constitutional
          Rights Have Not Been Violated**

For the reasons stated above, the Plaintiff has failed to demonstrate that the TSO

defendants violated his constitutional rights. Therefore, he is not entitled to any declaratory

relief.

**CONCLUSION**

For the reasons stated above, this Court should dismiss this action against the three TSA

defendants.

Dated: July 27, 2012                                  Respectfully Submitted

Kevin J. O'Connor                                     Stuart F. Delery
United States Attorney                                Acting Assistant Attorney General

                                                      Rupa Bhattacharyya
                                                      Director, Torts Branch

                                                      Andrea W. McCarthy
                                                      Senior Trial Counsel

                                                      /S/ Edward J. Martin
Manuel Lucero                                         Edward J. Martin
Assistant United States Attorney                      Trial Attorney, Torts Branch
                                                      Civil Division
                                                      United States Department of Justice
                                                      P.O. Box 7146, Ben Franklin Station
                                                      Washington, D.C. 20044
                                                      Tel: 202-616-1024
                                                      Fax: 202-616-4314
                                                      Edward.Martin2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2012, a copy of this pleading was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                      /S/ Edward J. Martin
                                                      Edward J. Martin
                                                      Trial Attorney, Torts Branch