UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PHILLIP MOCEK,

        Plaintiff,

vs.                                        No. CV 11-1009-JB/KBM

CITY OF ALBUQUERQUE *et al*,
        Defendants.

## CITY OF ALBUQUERQUE DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REQUEST FOR LEAVE TO FILE AMENDED COMPLAINT

      Defendants respectfully submit their reply to Plaintiff's Opposition To Defendants' Motion to Dismiss And Request For Leave To File Amended Complaint ("Response"). Defendants' motion should be granted and Plaintiff's request to amend should be denied because 1) The Court's Order involving the TSA Defendants is dispositive of the claims asserted against these Defendants; 2) Plaintiff improperly seeks leave to amend his complaint in violation of D.N.M. L.R.7; 3) Plaintiff's presentation of "new evidence" does not warrant continuation of this case or amendment of his Complaint due to its futility. The claims against the individual City Defendants are subject to dismissal on qualified immunity grounds, and the claims against the municipal actors are subject to dismissal because Plaintiff has failed to state a viable constitutional claim which precludes municipal liability.

**I.  Plaintiff's recitation of the facts:**

      Plaintiff's summary of the facts (Response at 1 through 17¶1), mirrors the allegations set forth in his Complaint, and as such, does not require a response from City Defendants, particularly since under 12(b)(6) analysis, the Court "…must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor." [Doc. 49 at 49 ¶2, 50] (citation omitted).

**II.  Response to Plaintiff's claims of pretextual arrest and search**

1

Plaintiff contends that his arrest and search were a pretext, to wit: "Defendants were bound and determined to arrest Mocek on any basis whatsoever once they learned that the federal defendants wanted him arrested…and allegedly attempted to destroy Plaintiff's videotape of the incident in an …attempt to suppress exculpatory evidence in violation of the 4th Amendment and the 6th Amendment right to a fair trial." (Response at 17 Section IA,18 ¶1).

### 1. Plaintiff's "facts" do not provide proof of a pretextual arrest or search

Plaintiff contends that he:

1) "was not disturbing TSA officers;" 2) "he agreed to be escorted away;" 3) "…TSA Defendants did not ask the City Defendants that Phil be arrested;" 4) City Defendants arrested Plaintiff "…even though he had identified himself, and then lied and claimed he did not identify himself;" 5) Defendants made "…numerous misstatements" in the report; 6) "the City Defendants seized the camera because it contained 'evidence,' but they then tried their best to destroy the evidence." (Response at 17§1A(a)-(f)).

However, this Court has already determined in its Order that:

- Taking Mocek's allegations as true, Mocek's filming activities caused a distraction to TSA agents in their duties and raised security concerns. [*Id.* at 108 ¶2].
- The TSA Defendants truthfully advised the City Defendants that Mocek was causing a disturbance and would not comply with their orders that he stop filming, the officers observed Mocek's unwillingness to comply with TSA or law enforcement directives, and observed the fact that Mocek's actions distracted at least two TSA agents from their security duties at the checkpoint. [*Id.*].
- While Plaintiff's conduct might not have constituted disorderly conduct under state law, reasonable suspicion may exist even if Plaintiff's conduct was not a violation of a crime with which he was charged because officers are not required to articulate a particular crime in evaluating whether reasonable suspicion exists (citation omitted) [*Id.* at 110 & 111].
- Defendant TSA's report to the City Defendant officers was a sufficient and reliable basis to form reasonable suspicion and did not require the officers to independently determine whether Plaintiff's conduct was innocent under reasonable suspicion standards. [*Id.* at 111].
- Plaintiff's arrest was lawful because the Defendant officers were authorized to direct Plaintiff to provide his identification once reasonable suspicion existed and his failure to comply provided sufficient probable cause to arrest him under New Mexico's concealing identification statute. [*Id.* at 112 ¶2].

In short, Plaintiff's insistence that he was not causing a disturbance does not provide a sufficient basis to prove that his arrest was pretextual, particularly where, as here, the Court has

determined that the Defendant Officers' actions were lawful. Furthermore, Plaintiff's subsequent acquiescence during his escort by the airport police is immaterial to the probable cause analysis. The focus of the probable cause analysis is objective and focuses solely on whether "…a reasonable officer could have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer." [Doc. 49 at 75 ¶1 quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). Furthermore, "TSA employees are not law enforcement officers." (citation omitted). Accordingly, no matter what the TSA Defendants asked the City Defendant officers to do, the authority and decision to arrest Plaintiff rested solely with the Defendant officers pursuant to state statutory law. See NMSA (1978) §3-13-2. The Court, having determined that the Defendant Officers acted lawfully, renders the TSA Defendants' request or intent inconsequential.

In relation to Plaintiff's contention that he identified himself and/or that the Defendants lied about it, this statement directly contradicts Plaintiff's Complaint and Response, whereby he notes that he refused to identify himself prior to his arrest, electing instead to "remain silent." (Complaint ¶54; Response at 6¶1). The fact that Plaintiff reports to have had a change of heart after his arrest and eventually identified himself while his arrest paperwork was being drafted, does not render his arrest for concealing his identity either illegal or demonstrative of a pretextual arrest. As this Court reasoned in its Order, the Defendant officers "…could legally demand Mocek to produce identification, because they had reasonable suspicion that he was engaged in criminal activity. His failure to produce that identification gave the AAPD officers probable cause to arrest him." [Doc. 49 at 112¶2]. Accordingly, even if Plaintiff subsequently elected to identify himself post arrest, probable cause is determined <u>at the time that the arrest occurs</u>, not subsequent to it. The inquiry "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer <u>at the time of the arrest</u>" *Devenpeck v. Alford,* 543 U.S.146, 152 (2004) (emphasis added);

*Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (Where an objectively reasonable officer could conclude that the historical facts <u>at the time of the arrest</u> amount to probable cause, probable cause for the arrest is established") (emphasis added).

Plaintiff's contention that numerous misstatements were made in the report is equally unpersuasive, because even if Plaintiff's allegations were taken as true, if probable cause to arrest Plaintiff existed, "…the officer's 'subjective characterization of his [Plaintiff's] actions is irrelevant'" in determining whether an arrest was lawful. [Doc. 49 at 108 ¶1 quoting *United States v. Rodriguez,* 836 F. Supp. 2d 1358, 1274 (D.N.M. 2011 (Browning, J.) (quoting *United States v. Ceballos*, 335 F. App'x at 227-29).

Finally, Plaintiff's assertion that the Defendant Officers attempted to destroy the video tape is unavailing for two reasons. First, **t**his Court held that the search was valid because probable cause for his arrest existed, "…and because, as Mocek alleges, he was searched as soon as he was taken to the AAPD offices", i.e. immediately after his arrest. Because the search was incident to a lawful arrest, no fourth amendment violation for unreasonable search or seizure was established. [Doc. 49 at 112 ¶2] (citations omitted). Secondarily, Plaintiff's belief that his camera was tampered with subsequent to his arrest is simply insufficient to establish that the search was pretextual, as more fully described below in section 4.

    **2.**     **Plaintiff's citation to case law does not provide a basis to demonstrate that the arrest or search was pretextual in violation of the Fourth or Sixth Amendment**

Plaintiff's reliance on *Winters v. Board of County Commissioners*, 4 F.3d 848 (10th Cir. 1993) in support of his assertion that the search was pretextual and violative of the Fourth Amendment is of no value in support of his contention because *Winters* is factually distinguishable and applied legal principles that have no nexus to this case. (See Response 17 at §1A and 18 ¶1). In *Winters,* an officer received word from a man indicating that his niece had stolen a ring from her uncle which she later pawned. *Id.* at 850-51. The defendant officer filed a report and a probable cause affidavit to effectuate

4

the niece's arrest, and used an Oklahoma law which requires pawnshops to provide officers with detailed records for every buy or pawn transaction, to review the pawnshop records to determine whether the ring had been pawned. *Id.* at 851. The officer discovered that the niece had pawned the ring, saw it in a case in plain sight, and took custody of it for use in the niece's criminal case. *Id.* The niece subsequently filed a §1983 action in which she asserted that the warrantless seizure and the disposition of the ring violated her Fourteenth, Fourth, and Fifth Amendment rights, among other allegations. *Id.* The District Court adopted the Magistrate Judge's recommendations by dismissing the suit and holding that her constitutional rights had not been violated. *Id.* The Appellate Court disagreed, and held that "…when a law enforcement officer intends to seize a particular piece of criminal evidence from the premises of a pawnshop, the seizure may not be substantiated by relying on the pretense of an administrative search coupled with the plain view doctrine. In such a situation, the officer must obtain a warrant" for the seizure to be lawful *Id.* at 854-855.

In this case, Plaintiff's camera was lawfully seized incident to his arrest. [See Complaint at 13 ¶57]; [Doc. 49 at 112¶2]. Moreover, the seizure neither involved a pawnshop or administrative law which the Defendant Officers used to investigate or effectuate Plaintiff's arrest. Finally, unlike the situation in *Winters* where an officer seized evidence to use against the defendant, here, according to Plaintiff, the Defendant Officers had no intention of using the evidence against him since they allegedly attempted to destroy it. (Response 17 §1A). Most notable, however, is the fact that by Plaintiff's own admission, the actual evidence seized, namely the video camera containing the video footage of the incident, was used at Plaintiff's criminal proceeding and according to Plaintiff, "…the viewing of the tape by the jury in Mocek's ensuing criminal trial **was the key to his full acquittal**." (Response at 18 ¶2). Thus, in contrast to *Winters*, where the evidence was improperly seized and then used against the individual in a criminal proceeding, here, the video camera was legitimately seized incident to his arrest and was, according to Plaintiff, of great benefit to him in his criminal proceeding.

Plaintiff also relies on *Geter v. Fortenberry*, 849 F.2d 1550 (5th Cir. 1988) for the proposition that Defendant Officers' alleged attempt to suppress exculpatory evidence (alleged attempted destruction of the videotape) is constitutionally infirm. (Response at 18¶2). However, *Geter* has glaring distinctions that fail to support his pretextual search allegation. In *Geter,* a Plaintiff who was <u>convicted</u> of two burglaries and subsequently released when another individual was identified as having committed the burglaries, filed a civil rights suit against the investigating police officer among others. *Id.* at 1551-1552. The police officer's qualified immunity summary judgment was denied and he appealed. *Id.* The plaintiff alleged that: 1) the officer passed photographs of him to another law enforcement agency which resulted in him being falsely identified as the individual who robbed a restaurant and resulted in his <u>conviction</u>; 2) the photographs were used by the sister law enforcement agency in an attempt to obtain additional false identifications in other robbery cases in another county; 3) as a result of the passing of the photographs additional crimes were attributed to these Plaintiffs by various law enforcement agencies; and 4) the officer concealed exculpatory evidence that contradicted the false and/or fraudulent identifications. (*Id.* at 1558-1559). The Court reasoned that "…a police officer cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means or deliberately conceals exculpatory evidence, for such activity violates clearly established constitutional principles." *Id.* at 1559 (citing *Manson v. Brathwaite,* 432 U.S. 98 (1977) (improperly suggestive identification procedures are violative of Fourteenth Amendment Due Process; *Brady v. Maryland,* 373 U.S. 83 (1963) (suppression of confession was due process right violation). The Court noted that because a factual dispute between the plaintiff and defendant existed regarding the officer's conduct, dismissal of the appeal involving this officer was necessary pending discovery *limited to resolution of this factual dispute,* and if the trial court decided that the officer did not violate clearly established law while obtaining eyewitness identifications, then he would be entitled to his immunity defense. *Id.* at 1561.

In this case, while Plaintiff claims that Defendant Officers attempted to destroy the video tape, there are no claims against the Defendant Officers here that bear any resemblance to those at issue in *Geters*. (false identification and covering it up). In addition, the Court's Order in this case was premised solely on Plaintiff's allegations, removing the prospect of a factual dispute between the parties herein. [Doc. 49 at 49¶1, 50¶1). In this Circuit, the subjective motives of an officer are not material to Fourth Amendment analysis. "Under the Fourth Amendment, the constitutionality of an arrest does not depend on the arresting officer's state of mind." *Howards v. McLaughlin,* 634 F.3d 1131, 1142 (10th Cir.2011), *petition for cert. filed* (U.S. Aug. 25, 2011) (No. 11–262); *see also Fogarty v. Gallegos,* 523 F.3d 1147, 1156 (10th Cir.2008) ("[A]n officer's own subjective reason for [an] arrest is irrelevant, and it does not matter whether the arrestee was later charged with a crime."); see also *United States v. Causey,* 834 F.2d 1179, 1184 (5th Cir.1987) (en banc) ("so long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry") (footnote omitted).[1]

---

[1] The Tenth Circuit has also rejected the pretextual analysis under the Fourth Amendment in the context of a *Terry* stop. In *United States v. Botero- Ospina*, 71 F.3d 783 (10th Cir. 1995) (en banc), the Court expressly overturned *United States v. Guzman,* 864 F.2d 1512, 1515 (10th Cir.1988), where the Tenth Circuit had defined a pretextual traffic stop as one in which "the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop"). The *Guzman* Court had adopted a test to determine whether a stop is pretextual as follows: " 'whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose.' " *Id.* The *Botero* Court held that this standard had proven unworkable because it had been applied in an inconsistent and sporadic fashion and a number of other circuits had rejected it. *Botero* at 786-787. The *Botero* Court held that a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. *Id.* In adopting that standard, *Botero* also reasoned in part that it is "irrelevant that the officer may have had other subjective motives for stopping the vehicle. Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated "any one of the multitude of applicable traffic and equipment regulations" of the jurisdiction. *Id.* quoting *Delaware v. Prouse,* 440 U.S. 648, 661 (1979).

Applying that standard here, since this Court has properly determined that reasonable suspicion to question Plaintiff existed, and that the arrest was based on probable cause under the objective analysis requirement, Plaintiff's Fourth Amendment pretext claim necessarily fails.

In relation to Plaintiff's Sixth Amendment pretext claim, the fact that Plaintiff states that he was able to restore the video and in fact it was used at his criminal trial where he was acquitted is fatal to this proposed claim. There can be no constitutional violation based on an alleged attempt to either destroy or withhold exculpatory evidence where the complainant used the alleged evidence and was acquitted. While the duties to disclose and preserve impeachment or exculpatory evidence are grounded in the due process right to a fair trial, *Kyles v. Whitley,* 514 U.S. 419, 434 (1995); *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "… the withholding or destruction of evidence violates a criminal defendant's constitutional rights only if, as a result of the withholding or destruction of evidence, the criminal defendant is denied a fair trial." *U.S. v. Bagley*, 473 U.S. 667, 678 (1985). Consequently, "…[r]egardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial." *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999); accord *Gibbons v. Lambert*, 358 F.Supp.2d 1048, 1073 (D. Utah 2005) (quoting *Morgan*).

Ultimately, Plaintiff has failed to present any evidence or case law which would provide a basis for this Court to alter its determination that Plaintiff's stop, arrest, and search were lawful, or that his Fourth or Sixth Amendment rights were violated.

### 3. Plaintiff's request to amend his Complaint is futile.

In his Response, Plaintiff seeks leave to amend his complaint to add both a Fifth Amendment and Sixth Amendment claim, as well as adding a copy of the transcript of the video tape to the amended complaint. (Response at 18 §B, 21§B, 23§7).

To begin with, Plaintiff's request should have been submitted in a separate pleading pursuant to Fed. R. Civ. P. 7(b):"A request for a court order must be made by motion. The motion must: (A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought." In addition, D.N.M. LR. 15.1 requires that " [a] proposed amendment to a pleading must accompany the motion to amend." Plaintiff neither filed a separate motion nor attached a copy of the proposed amended complaint. The purpose of Rule 7(b) is to provide notice to the court and the opposing party of the basis for the motion, and advances the policies of reducing prejudice to either party and assuring that "the court can comprehend the basis of the motion and deal with it fairly." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 1192 at 42 (2d ed.1990); *see also id.* § 1191 at 38. Where a party does not submit a motion to amend to the court, the court is not required to address the matter. *Calderon v. Kansas Dep't of Soc. & Rehabilitation Servs.*, 181 F.3d 1180, 1185 (10th Cir.1999) *Brever v. Rockwell Intern. Corp.*, 40 F.3d 1119, 1130 (10th Cir. 1994) (normally a court need not grant leave to amend when a party fails to file a formal motion); *Glenn v. First Nat'l Bank,* 868 F.2d 368, 370 (10th Cir.1989) (held it insufficient where the plaintiffs made a bare request in their response to a motion to dismiss "that leave be given to the Plaintiffs to amend their Complaint"); *Curtis Ambulance of Fla. v. Board of County Comm'rs,* 811 F.2d 1371, 1386 n. 15 (10th Cir.1987) (a court is not obligated to conduct a plaintiff's case for him when he fails to seek to amend a pleading).

Even if this Court were to overlook the impropriety of Plaintiff's request to amend the Complaint, Plaintiff's request should be denied on futility grounds. A complaint may be amended "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). Thereafter, such an amendment requires leave of Court or written consent of the adverse party, and "leave shall be freely given when justice so requires." Fed. R.Civ. P. 15(a). It is within the Court's discretion, however, to deny leave to amend a pleading under Fed. R. Civ. P. 15(a) for such things as "futility of

9

amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); accord *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999). Plaintiff's proposed amendments are futile because they would be subject to dismissal under existing law.

### A. Fifth Amendment claim

Plaintiff's proposed Fifth Amendment claim is based on the Defendant Officers' alleged attempt "… to make Plaintiff speak despite his attempts to remain silent…" (Response at 21§B, 23§7), i.e. that he provide identification. The Fifth Amendment states that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled. See *United States v. Hubbell,* 530 U.S. 27, 34–38 (2000). "[T]o be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Id.* at 35; *Doe v. United States,* 487 U.S. 201, 210 (1988). The Fifth Amendment privilege against compulsory self-incrimination "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States,* 406 U.S. 441, 445 (1972). A person's refusal to disclose his name (See Complaint ¶54), based not on any articulated real and appreciable fear that his name would be used to incriminate him, however, but rather based on his belief that he was not required to identify himself, is not protected by the Fifth Amendment. *Hoffman v. United States,* 341 U.S. 479, 486 (1951) (a person "…is not exonerated from answering merely because he declares that in so doing he would incriminate himself - his say-so does not of itself establish the hazard of incrimination"). Plaintiff's refusal to provide his identity was based solely on his belief that he was not required to do so. [Complaint 54]. Under such circumstances, it is well-established that an officer may ask a suspect to identify himself in the course of the investigatory stop.

In fact, the United State Supreme Court has held that "[a]n identity request has an immediate relation to the Terry stop's purpose, rationale, and practical demands." *See Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt County,* 542 U.S. 177, 188 (2004). Applying that standard, the Tenth Circuit has also reasoned that in the context of an investigatory stop of a pedestrian, "[o]fficer safety ... is just as strongly implicated where the individual being detained for a short period of time is on foot, rather than in an automobile," so "[a]n officer detaining a pedestrian has an equally strong interest in knowing whether that individual has a violent past or is currently wanted on outstanding warrants." *U.S. v. Villagrana-Flores*, 467 F.3d 1269, 1339 (10th Cir. 2006) (also concluding that the pedestrian's interest "is no more robust merely because a short detention occurs while traversing on foot"). Thus, in the context of a Fifth Amendment challenge to an investigatory stop, the Tenth Circuit has narrowly construed that right. For example, in *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1026 (10th Cir. 1994) the Court held that "[a]lthough we have recognized a Fifth Amendment right to remain silent may be triggered during a *Terry* stop, we have narrowly limited that event to pre-arrest custodial interrogations where incriminating questions are asked." (citing *United States v. Perdue,* 8 F.3d 1455, 1463–66 (10th Cir.1993); *United States v. Griffin,* 7 F.3d 1512, 1517–18 (10th Cir.1993)). In fact, the case that Plaintiff relies upon to support his Fifth Amendment claim, namely, *Cooper v. Dupnik*, 963 F.2d 1220, 1238 (9th Cir. 1992), is inapplicable here precisely because it involved an officer who admittedly ignored *Miranda* warnings and the defendant's request for an attorney, and used coercive tactics to get the defendant to confess. *Id.* In the context of a custodial arrest, the *Cooper* Court held that "the officer's admitted purpose, namely to defy the invocation by an arrested suspect of his right to silence and to make him confess... can only be seen as an attempt to compel him to be a witness against himself." *Id.* However, *Miranda* warnings are typically **not** required during an investigatory stop. See *United States v. Griffin,* 7 F.3d 1512, 1516 (10th Cir.1993). To that end, in *Pallottino*, the Tenth Circuit noted that the Supreme Court has found a request at a scene of a motor vehicle accident

11

for biographical information, such as name and address, to be "an essentially neutral act." *Id.* (quoting *California v. Byers,* 402 U.S. 424, 432 (1971). Thus, the Court held that a request for personal information during an investigatory stop "…does not create the threat of criminal liability or self-incrimination..." and as such, "there is no clearly established right, under the Fifth Amendment, to ignore police requests at the scene of an investigation for a witness's name and address" *Id.*; see also *Koch v. City of Del City*, 660 F.3d 1228, 1246 (10th. Cir. 2011) (at the time of the plaintiff's arrest, it was not clearly established that an individual has a Fifth Amendment right to refuse to answer an officer's questions during a *Terry* stop).

Since this Court has determined that Defendant Officers had sufficient reasonable suspicion to request Plaintiff's identification, and this Circuit and the United States Supreme Court recognize the validity of requesting such biographical information during an investigatory stop in line with constitutional norms, Plaintiff's Fifth Amendment claim would be futile.

### B. Sixth Amendment claim

Plaintiff's proposed Sixth Amendment claim is based on the Defendant Officers' alleged attempts to destroy the video tape. (Response at 18§B and 23§7). As noted above, Plaintiff's use at trial of the evidence he claims was tampered with, and his acquittal of the criminal charges, precludes him from pursuing a Sixth Amendment claim in this Circuit. See e.g.s.: *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999); accord *Gibbons v. Lambert*, 358 F.Supp.2d 1048, 1073 (D. Utah 2005); see also *Kyles v. Whitley*, 514 U.S. 419, 435 (1995) ( "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but <u>whether in its absence</u> he received a fair trial, understood as a trial resulting in a verdict worthy of confidence") (emphasis added). This is also the law in sister circuits. See e.g.s: *Smith v. Almada,* 623 F.3d 1078, 1087–88 (9th Cir.2010) (plaintiffs who prevail in an underlying criminal action have no *Brady*-related due process claims under § 1983); *Flores v. Satz,* 137 F.3d 1275, 1278 (11th Cir.1998) (finding no *Brady* violation in the

12

face of an acquittal because *Brady* protects a defendant from an unfair trial and an acquitted defendant does not suffer the effects of an unfair trial); *McCune v. City of Grand Rapids,* 842 F.2d 903, 907 (6th Cir. 1988) (where criminal charges are dropped before trial, and thus the underlying criminal proceeding terminated in an appellant's favor, there is no injury caused by the act of suppressing exculpatory evidence); *Hahn v. Sargent,* 523 F.2d 461, 467 (1st Cir.1975) ("The tardy and reluctant disclosure of exculpatory evidence establishes no triable issue, for ... appellant suffered no prejudice as a consequence of the late disclosure. The material was made available in time to aid the defense in its cross-examination ..., and appellant was acquitted."). Plaintiff's use of the alleged tampered evidence and subsequent acquittal does not constitute a violation of his right to a fair trial and as such, his Sixth Amendment claim would be futile as well.

    4.      **First Amendment**

Plaintiff's First Amendment Response argument essentially states he was protesting against the TSA's unlawful order and criticizing the TSA for issuing the order, and he was arrested to punish him for voicing his criticism and as a pretext to seize his camera. (response 19 §2). Notably, nowhere in Plaintiff's description of the incident in his Complaint, does he suggest that he was criticizing the TSA. Rather, his Complaint states that he made statements about what he believed were permissible practices in publicly accessible areas of the Airport (Complaint 44-54), and in fact told Defendant Dilley during the encounter that "he intended to comply with all of the TSA's rules and regulations." (See Complaint 51). This is in obvious conflict with his new claim that he was criticizing the TSA. Even if his new statement were taken as true, however, as discussed above, the inquiry into the propriety of an arrest is an objective one. Using that standard, this Court's detailed analysis of the First Amendment, particularly in the setting of the airport- a non-public forum - renders Plaintiff's argument inadequate in establishing a First Amendment claim. Plaintiff's citation to cases involving situations outside airports have no place in this inquiry. Furthermore, this Court has determined that a proper

basis for the arrest existed. Accordingly, no matter how many times Plaintiff claims that he was retaliated against based on his First Amendment speech, he has failed to demonstrate to this Court that its analysis is flawed, or that the arrest was violative of First Amendment tenets. Finally, it is highly questionable whether Plaintiff's conduct constitutes protected speech, given that he conveyed no message that onlookers would understand to be a particularized message, or that the Defendant Officers would understand was expressive speech under the First Amendment. Plaintiff's insistence that he could film and did not have to show his identification is wholly insufficient to demonstrate that the Defendant Officers understood him to be conveying expressive speech, or retaliated against him as a result of the content of his speech. Thus, Plaintiff's reliance on *Tobey v Jones*, 706 F.3d 379, 387 (4th Cir. 2013) is misplaced, since the plaintiff in that case overtly communicated a particularized message in response to enhanced screening procedures by removing his shirt at a security checkpoint so that he could display the text of the Fourth Amendment which he had written on his chest. When he was told that he did not have to remove his clothing, he advised the police that he wanted to express his view that the screening process was unconstitutional, at which point he was promptly arrested. *Id.* The *Tobey* Court held that the plaintiff neither disregarded an order nor refused to follow any order directed to him. *Id.* In contrast, this Court determined that Plaintiff never explained why he was filming or why he refused to provide identification, and in fact he did distract TSA employees from their duties. [Doc. 49 at 98¶1, 108-109). Under Plaintiff's theory, Defendants should have intuited that Plaintiff was trying to convey a particular message. Such a theory is hardly in line with First Amendment tenets, and is wholly insufficient to invoke First Amendment protections. Moreover, Plaintiff admits that he directly defied both TSA's and Defendant Officer Dilley's directives. (Complaint¶¶ 44-46, 48, 52, 54). Under such circumstances, *Tobey* simply has no place in the Court's analysis.

    **5.**    **Malicious Abuse of Process**

Plaintiff contends that Defendants' Motion only deals with his abuse of process claim in a "cursory" manner when they argued that if probable cause to arrest exists, Plaintiff cannot sustain this claim. (Response 19 §2). Plaintiff states that because he is claiming that probable cause for his arrest did not exist, and that the arrest was pretextual, this claim should remain. Plaintiff has failed to set forth any legal argument demonstrating that the Court's probable cause determination was erroneous. Furthermore, Plaintiff's pretext arguments do not survive scrutiny. Plaintiff simply cannot sustain the abuse of process claim, because one of the main elements of that claim is lack of probable cause for the arrest. *Wilkins v. DeReyes,* 528 F.3d 790, 801(10th Cir.2008) (Probable cause is a requirement for a malicious prosecution claim). Further analysis on this claim is therefore unnecessary.

### 6.  Law Of The Case Doctrine

Plaintiff asserts that the law of the case doctrine does not apply because new evidence has been presented by Plaintiff in his Response which the Court was not privy to when it issued its Order. (Response 23¶1). The alleged new evidence is either immaterial to the Court's analysis or inconsequential to it as described above in Section IA. The law of the case doctrine applies because the Court has already rendered a decision which is wholly dispositive of the remaining claims in this case. The legal issues which the Court previously addressed in its Order include and extend to the remaining Defendants. Accordingly, there is no legal basis to reject the law of the case doctrine or refuse to follow its sound policies and tenets.

### 7.  Municipal Liability

Plaintiff essentially contends that the municipal liability claim should remain because Plaintiff properly alleged unconstitutional policies, practices, and conduct, and qualified immunity does not preclude him from pursuing the City. (Response 23§5). Plaintiff's contention wholly negates a whole body of law which states that if a constitutional violation does not exist, there can be no municipal liability. This Court has determined that Plaintiff has no viable constitutional claim in this case. Nor

are the proposed amended allegations sufficient to state a viable constitutional claim. The lack of a viable constitutional claim is fatal to all municipal liability claims and as such, this claim is subject to dismissal.

### 8. Declaratory Relief

Plaintiff is precluded from seeking declaratory relief under the mootness doctrine since there is no viable constitutional claim to form the basis of the requests for declaratory relief. [See Complaint Count VIII]. Plaintiff's claims are simply in-actionable and as such, seeking a declaratory judgment based on non-existing constitutional claims is misplaced.

## IV. CONCLUSION

This Court's Order on the TSA Defendants' Motion to Dismiss is dispositive of the claims asserted against the Defendant Officers under the law of the case doctrine. Plaintiff has not provided any legal argument which provide a basis for this Court to deviate from that doctrine or its prior holdings in this case. Plaintiff's "new evidence" is merely repetitive of the assertions set forth in his Complaint, or ineffectual in the analysis of his claims. Furthermore, aside from the fact that Plaintiff has improperly submitted a request for leave to file an amended complaint, the proposed claims are futile and as such should not be entertained. Ultimately, although Plaintiff believes otherwise, this Court has comprehensively analyzed the law and rendered an appropriate decision. That thorough analysis extends equally to the remaining individual and municipal Defendants, rending the remaining claims and Defendants ripe for dismissal.

    Respectfully Submitted,

    /s/ Renni Zifferblatt
    The Baker Law Firm
    Jeffrey L. Baker
    Renni Zifferblatt
    20 First Plaza Suite 402 NW
    Albuquerque, N.M. 87102
    505-247-1855

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was provided to counsel of record on this 26th day of March 2013 via the CM/ECF filing system.

/s/Renni Zifferblatt