1                 IN THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF NEW MEXICO

3

PHILLIP MOCEK,
4
                    Plaintiff,
5
          vs.                        NO:  CIV-11-1009 JB/KBM
6
CITY OF ALBUQUERQUE, ALBUQUERQUE
7 AVIATION POLICE DEPARTMENT,
MARSHALL KATZ, in his official
8 capacity as Chief of Police of the
Albuquerque Aviation Police
9 Department, JONATHAN BREEDON,
GERALD ROMERO, ANTHONY SCHREINER,
10 ROBERT F. DILLEY a/k/a BOBBY
DILLEY, LANDRA WIGGINS, JULIO DE LA
11 PENA, and DOES 1-25, inclusive,

12                    Defendants.

13       Transcript of Motion Hearing before The Honorable

14 James O. Browning, United States District Judge, held in

15 Albuquerque, Bernalillo County, New Mexico, commencing on

16 Friday, July 12, 2013, at 10:50 a.m. and concluding at

17 11:31 a.m.  Proceedings recorded by mechanical stenography;

18 transcript produced by computer-aided-transcription.

19

20

21

22          Danna Schutte Everett, CRR, RPR, RMR, CCR 139
                    United States Court Reporter
23                    100 N. Church Street
                    Las Cruces, New Mexico  88001
24                    Phone:  (575) 528-1656
                    Fax:  (575) 528-1645
25                    dannadawn@comcast.net

Danna Schutte Everett
Official United States Court Reporter
333 Lomas Boulevard, Northwest
(505) 348-2283

```
1   For the Plaintiff:

2       LAW OFFICE OF WILLIAM SIMPICH
        1736 Franklin Street, Tenth Floor
3       Oakland, California  94612
        BY:  MR. WILLIAM SIMPICH, Telephonically
4                    and
        LAW OFFICE OF MARY LOUISE BOELCKE
5       6707 Academy Road, Northeast, Suite A
        Albuquerque, New Mexico  87109
6       BY:  MS. MARY LOUIS BOELCKE

7   For the City Defendants:

8       THE BAKER LAW FIRM
        20 First Plaza, Northwest, Suite 402
9       Albuquerque, New Mexico  87102
        BY:  MR. JEFFREY L. BAKER
10
    For the Individual Federal Defendants:
11
        U.S. Department of Justice
12      Post Office Box 7146
        Washington, D.C.  20044
13      BY:  MR. EDWARD J. MARTIN, Telephonically

14  Also Present:  Mr. Mark Pilcher, Telephonically

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  All right.  Good morning, everyone.

2   Sorry for the delay.  That sentencing that we had just before

3   you went a little bit longer than we anticipated, so I

4   appreciate your patience.

5          We have counsel that are on the telephone; we have

6   counsel here in the courtroom.  For those that are counsel here

7   in the courtroom, don't feel like you have to stand for me;

8   feel free to just remain seated and talk into one of those

9   microphones so that counsel on the telephone can hear you.  If

10  you do wish to stand -- and I never could stay seated in a

11  courtroom -- then come up to the podium and speak into the

12  microphone there so that counsel can hear you.

13         And the counsel that are on the telephone, if at any

14  point you can't hear, let us know and we'll configure so that

15  you can.

16         All right.  The Court will call Phillip Mocek versus

17  City of Albuquerque, et al., Case Number 11-1009 JB/KBM.  This,

18  of course, is a civil case.

19         If I could have entries of appearance.

20         Let's start with the plaintiff here in the courtroom.

21         MS. BOELCKE:  Mary Lou Boelcke for the plaintiff,

22  Your Honor.  Good morning.

23         THE COURT:  Ms. Boelcke, good morning to you.

24         And for plaintiff's counsel on the telephone.

25         MR. SIMPICH:  Good morning, Your Honor.  William

```
 1  Simpich.  I'm also appearing for Mr. Mocek.
 2             THE COURT:  All right.  Mr. Simpich, good morning to
 3  you.
 4             And other counsel for the plaintiff?  Anyone else on
 5  the phone?
 6             MR. SIMPICH:  No.  That's it, Your Honor.
 7             THE COURT:  Oh, okay.  All right.
 8             And for the defendants.  Let's start with the City
 9  defendants.
10             MR. BAKER:  Your Honor, Jeffrey Baker on behalf of
11  the City of Albuquerque, the Albuquerque Aviation Police
12  Department, Marshall Katz, Robert Dilley, Landra Wiggins, and
13  Julio De Le Pena.
14             THE COURT:  All right.  Mr. Baker, good morning to
15  you.
16             Did I understand -- Let's see.  Is someone on the
17  phone for the --
18             MR. MARTIN:  Yes, Your Honor.  Edward Martin from the
19  Department of Justice on behalf of the individual federal
20  defendants.  And I also have agency counsel here from TSA, as
21  well.
22             THE COURT:  All right.  Mr. Martin, good morning to
23  you.
24             MR. MARTIN:  Good morning, Your Honor.
25             THE COURT:  All right.  We're here on the City of
```

1    Albuquerque defendant's motion to dismiss.  I guess I've

2    reviewed everything, and I guess my impression is that I'm not

3    sure this is probably a good place to apply law of the case

4    because of the interlocutory nature of the motion for summary

5    judgment that I have granted as to the TSA defendants, but I

6    guess I'm also wondering whether what I ought to do is, because

7    I basically had to decide this issue of the City of Albuquerque

8    defendants, their -- their actions, whether I ought to just

9    give you an opinion that largely moves over what I did for the

10   TSA over to the City of Albuquerque and then have, really, the

11   defendants -- the plaintiff tell me why that's not appropriate.

12         I understand that they really may have nothing new to

13   argue, we argued that very extensively in the TSA motion, and

14   if that's the case maybe the thing to do is try to get you a

15   judgment so that you can get this up to the Tenth Circuit as

16   soon as possible.

17         The motion to amend, I certainly will need to

18   consider that.  I guess I wasn't too excited about the new

19   claims, but certainly need to work through the issues there.

20   But I guess that's kind of what I'm thinking, that at least at

21   the moment what I need to do for you is get you an opinion on

22   this and get a judgment entered so that you can take this up on

23   appeal.

24         Ms. Wild has handed me the plaintiff's motion today

25   to take some issues -- judicial notice of some things.  I have

1    not had a chance to review that, so if there's some things

2    there that we need to discuss, then we can in connection with

3    this.

4            But those are sort of my thoughts.

5            Mr. Baker, it's you're motion.  If you wish to seek

6    in support of it.

7            MR. BAKER:  Your Honor --

8            MR. SIMPICH:  Excuse me, Your Honor.  It's hard to

9    hear --

10           THE COURT:  Who is speaking?  You'll need to identify

11   yourself when you're on the phone, who's speaking.

12           MR. SIMPICH:  Yes.  Speaking is Mr. Simpich for the

13   plaintiffs, Your Honor.

14           It's difficult to hear Mr. Baker.

15           THE COURT:  Well, he hasn't spoken yet, so maybe

16   that's the reason.  Let's let him speak a few sentences, and

17   then we'll see how you hear.

18           MR. SIMPICH:  Thank you, Your Honor.

19           THE COURT:  All right.

20           MR. BAKER:  Thank you, Judge.

21           It is our motion.  And Your Honor wrote a very

22   thorough, very exhaustive analysis of the facts and the law in

23   this case based on the allegations in the Complaint.

24           THE COURT:  How are you doing, Mr. Simpich?  Is that

25   pretty good?

```
 1              MR. SIMPICH:  I'm sorry, it's so faint it's like the

 2    other side of a canyon.  I can barely hear him.

 3              THE COURT:  Well, let me have Mr. Baker, then, come

 4    up to the podium, and I'll move the microphone closer to you.

 5              MR. SIMPICH:  Appreciate it, Your Honor.

 6              MR. BAKER:  Your Honor, I'll repeat what I said a

 7    moment ago, which is that it is our motion to dismiss; that you

 8    wrote a very thorough, detailed analysis of both the law and

 9    the facts, and in multiple places in your Memorandum Opinion

10    you make some pretty definitive rulings with respect to legal

11    issues which affect my clients.  And I don't need to go through

12    all of those, but very briefly, with respect to the Fourth

13    Amendment claim, you said on page 2, "Mocek has also not

14    sufficiently alleged that he suffered a Fourth Amendment

15    violation at the hands of the Defendants Albuquerque Aviation

16    Police Department officers ... Dilley, ... Wiggins, and Julio

17    De La Pena."

18              You said at page 86 of your memorandum opinion, "The

19    Court concludes that, upon arrival at the screening checkpoint,

20    under the facts which Mocek has alleged, the AAPD officers had

21    reasonable suspicion to believe that Mocek was engaged in

22    criminal conduct, as the TSOs relayed to the AAPD officers.

23    The AAPD officers were, thus, authorized to demand Mocek's

24    identification, and when he did not, the AAPD officers then had

25    probable cause to arrest him.  Mocek has thus not sufficiently
```

1   alleged that he suffered a Fourth Amendment violation."

2          At page 103 of your Memorandum Opinion, "The Court

3   concludes ... that Mocek did not suffer a Fourth Amendment

4   violation at the AAPD officers' hands, and thus, the TSOs

5   cannot be liable for Mocek's asserted constitutional

6   deprivations under the Fourth Amendment."

7          You said at page 104 of your memorandum, "based upon

8   the totality of the circumstances the Court concludes that the

9   AAPD officers had reasonable suspicion that Mocek was engaging

10  in criminal conduct and, thus Dilley's demand that Mocek

11  produce identification was a lawful order."

12         You then cited at page 106 of your Memorandum Opinion

13  what the New Mexico law is with respect to the crime of

14  concealing identity.  You said at the bottom of page 106,

15  "Thus, the AAPD officers had the authority to order Mocek to

16  produce identification if they also had reasonable suspicion

17  that he was, or had been, engaging in criminal conduct."

18         Page 112 of your Memorandum Opinion, "Because the

19  Court concludes that the AAPD officers had reasonable suspicion

20  that Mocek was engaging in criminal activity at the screening

21  checkpoint, the Court further concludes that Mocek's arrest was

22  lawful.  The ... officers could legally demand Mocek to produce

23  identification because they had reasonable suspicion that he

24  was engaged in criminal activity.  His failure to produce that

25  identification thus gave the AAPD officers probable cause to

1    arrest him.  Concealing one's identity is a misdemeanor, for

2    which the AAPD officers lawfully arrested Mocek, because it was

3    committed in the AAPD officers' presence."

4         You then talked about the validity of the search.

5    Again on page 112 of your Memorandum Opinion, "The Court

6    concludes that the search incident to Mocek's arrest was valid,

7    because the AAPD officers had problem cause to arrest him."

8         You said at page 113 of your Memorandum Opinion that

9    there was no allegation in the Complaint that the AAPD officers

10   used more force than was reasonably necessary in arresting him.

11        Page 122 of your Memorandum Opinion, you mention both

12   the legality of the arrest and the legality of the use of

13   force, that it was not excessive, and the legality of the

14   search.

15        Your Honor, I can go through your Memorandum Opinion

16   in the same manner with respect to the First Amendment claims,

17   that the airport is not a traditional public forum, that under

18   the qualified immunity analysis there was no clearly

19   established law that what Mr. Mocek was trying to do was

20   protected by the First Amendment.  We have the most recent case

21   from the Tenth Circuit, the Storey case, where the Court said

22   that if the underlying arrest is valid, then there cannot be a

23   retaliatory free speech claim.

24        So throughout your Memorandum Opinion you essentially

25   knocked out every claim that plaintiff has against my clients,

1   so the case at this point, Your Honor, is -- or the issue at

2   this point is, where do we go from here?

3          We have cited in our motion the doctrine of law of

4   the case.  The law of the case is well recognized, although

5   there are exceptions to it.  None of those exceptions apply

6   here.  There is no new law which has been published since your

7   decision.  There are no new facts that plaintiff can bring

8   forward, although they want to add some additional legal

9   theories.  And the exception to law of the case is when the

10  Court's decision is clearly erroneous, and then there's

11  comments about what clearly erroneous means, and it's been

12  analogized to a several-day-old dead fish.

13         It seems to me, Your Honor, that if plaintiff was

14  unhappy with your Memorandum Opinion it might have asked you to

15  reconsider, but they did not have any legal grounds to do so,

16  they did not have new facts, there was not a new case that had

17  been published, and there was nothing to suggest your decision

18  was clearly erroneous.

19         The obvious place where this is going to go if

20  plaintiffs and his lawyers feel strongly enough about it, is to

21  the Tenth Circuit, and it seems to me that the Tenth Circuit is

22  in the best position to address your fundamental decision

23  whether or not this arrest was supported by probable cause.

24  And if the Court of Appeals determines that you got it wrong,

25  then it will remand the case and we'll do some discovery.  But

1   at this point if you were to deny the City's motion and in its

2   motion to dismiss would be in a somewhat uncomfortable position

3   of half the case has been dismissed, half the case is going to

4   go forward, when the whole nucleus of facts supporting the

5   probable cause to arrest are the same for both the TSA

6   defendants and the City defendants.

7           I won't belabor anything else, Judge.  Your decision

8   was very, very thorough, it touched every conceivable base that

9   I could think of, and I see no reason, based upon the

10  plaintiff's response to a motion to dismiss, that you should

11  reverse any of those decisions.

12          THE COURT:  Are any of the -- any of the claims that

13  the plaintiffs -- the plaintiff wants to add, do they concern

14  you as things that ought to be resolved substantively before --

15  before a judgment is entered, an appealable judgment in this

16  case?

17          MR. BAKER:  No, sir.  I believe they want to add a

18  Fifth Amendment claim saying that, as I understand it, that the

19  officers somehow improperly extracted inculpatory

20  information -- or tried to extract inculpatory information from

21  Mr. Mocek when they demanded that he give them his

22  identification.

23          He wasn't testifying against his penal interests.

24  This was not a courtroom proceeding.  These were simply police

25  officers who were asking for identification.  I'm not aware of

1    any case where a police officer has to give a person Miranda

2    rights before asking "Who are you?"

3         With respect -- I think there's a Sixth Amendment

4    claim they want to add.  I think that would probably be a right

5    of confrontation.  I'm not sure what the basis would be.  I

6    don't think that's something that needs discovery.

7         Essentially what we have is a situation where the

8    plaintiff set forth a very, very detailed Complaint which

9    allowed Your Honor to look at each and every one of those

10   allegations and conclude quite properly that there was nothing

11   there -- assuming that everything he said was true, nothing

12   there to support a First or Fourth Amendment violation by

13   either TSA or the City defendants.

14        So to answer your question, Judge, I see no reason

15   why you could not and should not simply dismiss my clients.

16   And if plaintiff wants to go forward he has a remedy up at the

17   Tenth Circuit.

18        THE COURT:  The new evidence that the plaintiff

19   submits as a reason for not just sort of pulling over the

20   Court's prior analysis, your thoughts on that?

21        MR. BAKER:  Well, I think there was some inconsistent

22   statements.  He said the officer got it wrong, the officer had

23   a subjective intent, this was a pretextual arrest.  And Fourth

24   Amendment analysis is based on an objective analysis, not a

25   subjective analysis, and based on everything that the plaintiff

1    said happened at the airport you very properly said, Very

2    sorry, but this will not support a Fourth Amendment or First

3    Amendment claim.

4           THE COURT:  Have you had a chance to look at this

5    motion for the Court to take judicial notice of DOJ's

6    statements, it looks like in another case?  Do you have any

7    comment on it?

8           MR. BAKER:  Yeah, I do, Judge.

9           Ms. Boelcke e-mailed me her proposed motion late

10   yesterday afternoon, and after 5:00 I e-mailed her back saying

11   I objected.

12          My understanding is that this is a brief from the

13   Department of Justice in a Maryland case in which the United

14   States is not a party.  My understanding -- And I'll be -- I've

15   never seen this before.  I'm not familiar with this until last

16   night when I looked at the statute.  Evidently, based on

17   28 U.S.C. 517.  Number one, I don't believe it's appropriate.

18   And, second, if we look at this Garcia case, the Statement of

19   Interest of the United States, it's factually distinguishable.

20   On the very first page, it says, "The United States urges the

21   Court to find that both the First and Fourth Amendment protect

22   an individual who peacefully photographs police activity on a

23   public street."

24          And then I had an e-mail exchange with Mr. Martin

25   this morning from the Department of Justice, and he directed me

1  to Footnote 5 on page 6 of this Statement of Interest, which

2  says, "This statement does not address First Amendment rights

3  in nonpublic and limited public forums."  And, clearly, in the

4  present case we are dealing with a public -- a nonpublic forum:

5  the airport.

6      In addition, Your Honor, with all due respect to the

7  quality of the lawyering in the Department of Justice, this is

8  simply a lawyer's brief.  It's not from a Court, much less an

9  appellate court.  And, you know, I'm not going to sit here and

10  tell you that you can't look at it.  Obviously, you can look at

11  whatever you want that might be helpful, but I don't think

12  there's anything helpful in this Statement of Interest that

13  would make you want to change your decision.

14      THE COURT:  So you don't have any problem with me

15  granting this motion and looking at this material?

16      MR. BAKER:  Well, the only problem I would have,

17  Judge, is if you surprise me and deny my motion to dismiss

18  based on the Statement of Interest, I would want the

19  opportunity to prepare a written response.  But I don't see

20  anything in it, quite frankly, that harms my client.

21      THE COURT:  All right.  Anything else you want to say

22  on your motion, then, Mr. Baker?

23      MR. BAKER:  No, sir.

24      THE COURT:  All right.  Ms. Boelcke, are you going to

25  take the lead here?

1          MS. BOELCKE:  Mr. Simpich is going to argue the

2    motion today, Your Honor.

3          THE COURT:  All right.  Mr. Simpich.

4          MR. SIMPICH:  Thank you, Your Honor.

5          THE COURT:  Before you start, Mr. Simpich, let me

6    just ask Mr. Martin if he has -- where he stands on this

7    motion, since I don't have any briefing from him, and then I'll

8    here from you, Mr. Simpich.

9          Mr. Martin.

10          MR. MARTIN:  Yes, Your Honor.  Edward Martin for the

11    individual federal defendants.

12          As Mr. Baker indicated, we had discussed this via

13    e-mail briefly this morning.  I didn't get it until after --

14    you know, late last evening, as well.

15          My understanding is that the Statement of Interest is

16    something similar to an Amicus brief and, therefore, an Amicus

17    brief type issue would not be appropriate, obviously, for

18    judicial notice.

19          We have no objection to Your Honor, of course,

20    reading the document itself.  And as Mr. Baker pointed out,

21    Footnote Number 5 basically indicates that the Statement of

22    Interest is specifically not relevant whatsoever to a situation

23    in which you have a nonpublic forum.

24          And here we had the United States Supreme Court, Your

25    Honor, and as I recall from our hearing several months ago with

```
 1  plaintiffs, I believe even plaintiffs admitted that this

 2  airport is considered a nonpublic forum and, therefore, the

 3  Statement of Interest itself is simply not relevant to our

 4  situation.

 5            THE COURT:  All right.  Thank you, Mr. Martin.

 6            Mr. Simpich.

 7            MR. SIMPICH:  Thank you, Your Honor.

 8            Am I coming in at the right volume, Your Honor?

 9            THE COURT:  Yeah, you're fine.

10            MR. SIMPICH:  Thank you.

11            THE COURT:  Do you have a way of talking a little

12  louder?

13            MR. SIMPICH:  I sure do.

14            THE COURT:  That's better.

15            MR. SIMPICH:  Thank you, Your Honor.

16            THE COURT:  All right.  Mr. Simpich.

17            MR. SIMPICH:  Your Honor, I want to focus first on

18  the First Amendment, if you will, because, given the ruling

19  that was made last time, it's our belief that the First

20  Amendment rights and the First Amendment claim are still

21  viable.  The elements of that claim that we would have to

22  establish to make a retaliation claim are that the plaintiff

23  was engaged in constitutionally protected activity; that the

24  defendants' actions caused the plaintiff to suffer an injury,

25  so it would chill a person of ordinary firmness from continuing
```

1   to engage in that activity; and that, finally, that defendants'

2   adverse action was substantially motivated as a response to the

3   plaintiff's exercise of constitutionally protected conduct.

4           And what we argued was that an act taken in

5   retaliation for the exercise of a constitutionally protected

6   right is actionable under 1983 even if the act when taken for a

7   different reason would have been proper.  And the cites are in

8   our brief, of course.

9           The argument here is that Mr. Mocek was protesting

10  against an unlawful order, and the unlawful order we're talking

11  about here is saying he couldn't film, and he criticized the

12  TSA's for saying he couldn't film because he had been told he

13  could film.

14          We also contend that the entire time he was being

15  nondisruptive.  And I recognize what the Court said on the

16  issue of there being an incident at the airport, but I think

17  the issue of disruption itself is addressed squarely in the

18  Tobey case, which we also cited in the First Amendment context.

19  And the Tobey case states that the First Amendment exists in

20  full force within the checkpoint, and it also states that

21  ignorance of the First Amendment by the police is no excuse,

22  and it also states that expressive conduct of -- whether or not

23  it's portrayed as a protest, if it's expressive conduct it's

24  not per se disruptive.

25          The focus in Tobey was on his calm conduct.  And this

1    is -- An essential element of this entire drama, Your Honor, is

2    that we allege throughout that Mr. Mocek engaged in calm

3    conduct, and that in itself we think is essential here.

4         And furthermore, because of his conduct and criticism

5    the City defendants arrested him both to punish him for the

6    criticism and to use it as a pretext to seize the camera, then

7    to go inside that camera and destroy the evidence.  And we

8    believe that course of conduct illustrates our central point,

9    that a person of ordinary firmness would back down in the face

10   of this activity where you arrest someone to punish them, you

11   seize the camera as a pretext, and then you destroy the

12   evidence, hoping that he won't be able to defend himself

13   successfully at trial.  And he did, but it cost him, of course,

14   $34,000 and a lot of waste of time.

15        So we believe the First Amendment claim, even in the

16   face of that previous order, is viable, it's alive and well.

17   We think it's similar to cases such as the Sloman versus

18   Tadlock case where the supporter of a ballot measure was

19   warned, cited, and arrested by the officer while engaging in

20   that First Amendment activity, and the Court found that the

21   officer did it to chill or deter the plaintiff's political

22   speech and such deterrence was a substantial or motivating

23   factor in the officer's conduct.

24        And the additional evidence I think that illustrates

25   this goes right back to Mr. Dilley's police report where he

1   claims the real -- what he says was the real reasons for the

2   arrest.  He cited him for disorderly conduct, he was cited for

3   refusing to obey a lawful order, and it was based on his

4   alleged violation of a criminal trespass order, which we have

5   contended throughout was never issued, and that issue was not

6   addressed in your previous order.

7           We contend that, in fact, this was a sham charge by

8   Officer Dilley.  The criminal trespass order was never made;

9   the client never refused to obey that criminal trespass order.

10  He simply said that he had the right to do what he was doing.

11  Mr. Dilley went so far as to claim that the client refused to

12  identify himself.  In fact, the evidence shows, and it hasn't

13  been controverted, that he provided his boarding pass with his

14  name on it to TSA, and there's every reason to believe that

15  Mr. Dilley would have known that.

16          Furthermore, when the Complaint alleges that

17  Mr. Dilley asked him for his name Mr. Dilley was told -- was

18  asked by our client, "In fact, do I have to give my name?  Is

19  that the law?"  And Mr. Dilley told him to be quiet.

20          What Mr. -- What our client simply did was said, "I

21  don't have any ID on me."  Which is true, he didn't have any ID

22  on him.  There was no ID to conceal.  He didn't have a form of

23  identification on him.  The only ID he had provided was the

24  boarding pass, and Mr. Dilley should have known about that.

25          So for the record, Your Honor, with all due respect,

```
 1   I would disagree with the fact that you addressed these issues
 2   regarding the City defendants without us having an opportunity
 3   to brief it or even an opportunity to imagine that we would
 4   need to brief it, because the focus was on TSA.  I understand
 5   the Court was being thorough, and I don't want to quarrel, but
 6   I want to make that objection for the record.
 7           Finally, I simply would want to state that in terms
 8   of the document we provided this week to counsel, they got it
 9   yesterday, we had it just a few days ago, and said, well, it
10   came out two, three, four months ago, and it seems like it's
11   relevant.  We didn't think it was right for this to go to the
12   Tenth Circuit without at least the Court having an opportunity
13   to look at it, peruse it, mull it over.
14           And, of course, if Mr. Baker or anyone else wants to
15   address it we would ask that they be given whatever time they
16   need to address it if they feel they need to do anything
17   further.  We feel it was right to bring it to the Court's
18   attention given the fact that there was going to be more time
19   spent on this case.
20           Thank you.
21           THE COURT:  Mr. Simpich, what do you think -- what do
22   you think I need to address -- what do you think I need to
23   address in this opinion regarding the City defendants that I
24   haven't addressed, either from a factual standpoint or legal
25   standpoint, in the TSA opinion?
```

1              MR. SIMPICH:  I think what I just stated, Your Honor,

2     on the First Amendment is the central point.  I think that

3     should be addressed.  And I would also offer that we did make

4     our request for the right to amend the Complaint.  I understand

5     their contention that I didn't do it in the form required by

6     the Tenth Circuit, and so I -- I will shoulder that, but ask

7     that the Court focus on the First Amendment issue in

8     particular, because I think that incorporates, basically, the

9     Fifth and Sixth Amendment issues that I also raised.

10             I don't think there's really any difference between

11    the First Amendment analysis for the destruction of the

12    evidence and the Sixth Amendment analysis regarding the fair

13    trial issue.  In fact, I think the First Amendment argument is

14    stronger because there's some language in the Sixth Amendment

15    cases suggesting that if you got an acquittal that's the end of

16    the matter.  And the First Amendment case makes it clear that

17    that's not the case.

18             THE COURT:  All right.  Thank you, Mr. Simpich.

19             Let me go to you, Mr. Martin.  Anything further you

20    want to say on this motion?

21             MR. MARTIN:  No, Your Honor.

22             THE COURT:  All right.  Mr. Baker, I'll give you the

23    last word on this motion.

24             MR. BAKER:  Your Honor, let me quote from the Storey

25    case.  That's Storey, S-T-O-R-E-Y, versus Taylor at 696 F.3d

1    987.   It's from October 2012, the Tenth Circuit.

2              On the last page, the Court below found Storey's

3    arrest was lawful.   It also found that when an arrest was

4    lawful, then there was no but-for causation for a related tort

5    requiring a retaliatory motive.   Thus, the Court applied

6    qualified immunity and granted summary judgment.   This result

7    was consistent with a recent Supreme Court opinion holding that

8    in the absence of but-for causation the arresting officer is

9    entitled to qualified immunity from a retaliatory arrest claim,

10   citing Reichle, R-E-I-C-H-L-E, versus Howards, 132 Supreme

11   Court 2088.

12             So if the underlying arrest was lawful, then there is

13   no First Amendment retaliation claim.   So the analysis, again,

14   goes back to your finding which you made repeatedly throughout

15   your Memorandum Opinion, that the officers had a reasonable

16   basis for asking Mr. Mocek for his identification, he refused,

17   and that is the crime of concealing identity for which he could

18   be arrested, and so, in essence, I'm not sure what his motive

19   was in trying to film at a security checkpoint, but when he

20   refused to identify himself he triggered his arrest.

21             THE COURT:   Does anything in this transcript, does it

22   trouble you or seem to you to be inconsistent with anything

23   that I said in the opinion?

24             MR. BAKER:   No, sir.

25             THE COURT:   Anything you think I need to deal with

1   before the Tenth Circuit takes a look at this?

2          MR. BAKER:  No, sir.  There was some -- The tape is

3   interesting to watch.  Mr. Mocek said -- or his lawyer said

4   during the trial, "If you watch the tape" -- he said that to

5   the jury -- "he's not being disruptive."  So there's a

6   difference of opinion, if you will, with respect to, was he

7   loud?  Was he doing the things that would support a disorderly

8   conduct prosecution?  And the jury came back and said he was

9   not guilty of disorderly conduct.

10          But as Your Honor pointed out in your decision, there

11   are many ways to disrupt a security checkpoint, and based on

12   what the TSA folks were saying and observing they determined

13   that this was a disruption to what they were trying to

14   accomplish.  They had to bring other officers over from their

15   normal duties.  There's always the danger, if you will, that

16   this is some type of end run to distract peoples' attention

17   that something else is going to happen in a different part of

18   the airport.

19          So again, it just goes down to whether or not your

20   decision that this was a lawful arrest is going to withstand

21   Tenth Circuit scrutiny, and I'm comfortable that it will.  But

22   that, I think, at this point is the proper forum to make that

23   decision.  I don't think you've been presented with anything

24   that would require you to revisit your decision.

25          THE COURT:  All right.  Thank you, Mr. Baker.

1          Well, I'm going to grant the plaintiff's motion for

2     the Court to take judicial notice of the Department of

3     Justice's Statement of Interest in Garcia versus Montgomery

4     County, Maryland, so I'll review that.  If Mr. Baker wants to

5     say anything further on it, since he just got it last night, he

6     can send me a letter.  And if the plaintiff feels that they

7     need to say anything further, they can also send that in.

8          I guess what I'm inclined to do is -- I'm still not

9     inclined to use law-of-the-case doctrine here and just say I've

10    decided all these issues, and so I'm going to just enter

11    judgment for the City defendants, but I do think I've done a

12    lot of the heavy lifting and deep plowing already, and so --

13    and I think I hear the plaintiff acknowledging that to a large

14    degree, but they are saying they do want me to focus

15    particularly on this First Amendment issue again and look at

16    some of the facts they're highlighting as far as the City

17    defendants.  So I guess I'm inclined to do that.

18         I'm not thinking that that changes my analysis in

19    finding that Mr. Mocek does not state a constitutional

20    violation against the City defendants, so I think the result is

21    going to be the same, but I do think I need to separately

22    analyze it.

23         So you may get an opinion that's just about as long

24    as what you got on the TSA defendants, but it will just be

25    incorporating large chunks of what I've done already over into

```
1    this opinion, and then take up some of these arguments that

2    you're wanting me to focus on, particularly in the First

3    Amendment area again -- or not maybe again, but focus on those

4    in this opinion.  So this opinion will differ there.

5            Like I said, I don't think it changes my fundamental

6    analysis here that the Complaint doesn't state a First

7    Amendment complaint, but I do want to take this separately and

8    evaluate it independently.

9            As far as the motion to amend, yes, it was not done

10   in an appropriate manner, but I do think I need to in this

11   opinion address the claims.  If, in fact, there are claims,

12   then -- that are viable, then I would probably allow the

13   plaintiff to amend to add those.

14           I guess my impression at this point is that, given

15   what I have said on the First and Fourth Amendment claims,

16   these aren't going to be available here.  I probably wouldn't

17   allow a declaratory judgment in those sorts of things.

18           I think someone's just come on the phone.  Is that

19   Mr. Fuqua?

20               MR. FUQUA:  It is, Your Honor.

21               THE COURT:  If you'll just hold a second, I'm

22   finishing up one hearing, and I'll be with you in a minute.

23               MR. FUQUA:  If you'd like, I can call back in a few

24   minutes.

25               THE COURT:  No, that's fine.  If you don't mind
```

1   listening to my rambling inclination on the motion to dismiss

2   in the prior case here.

3          MR. FUQUA:  Well, I may characterize it differently,

4   but I have no trouble waiting.

5          THE COURT:  So I probably will address those

6   additional claims, but I think probably what you're going to

7   get is a lengthy opinion that has a lot of the prior rulings I

8   have incorporated into it and then addressing specifically

9   these new claims.  But I think the end result is you're going

10  to get an opinion that's going to grant the motion to dismiss,

11  probably with a final judgment, and then y'all can head to the

12  Tenth Circuit.  So that's what I'm inclined to do.

13         I will sit and look at this judicial notice -- or

14  this Department of Justice statements, take the arguments that

15  Mr. Simpich has asked me to focus on this go-around and go from

16  there.

17         Is there anything else we need to discuss while we're

18  together?  Anything else I can do for you, Mr. Simpich,

19  Ms. Boelcke?

20         MR. SIMPICH:  Thank you, Your Honor.  I think I'm

21  satisfied.

22         THE COURT:  All right.  Mr. Baker?

23         MR. BAKER:  No, sir.

24         THE COURT:  How about you, Mr. Martin?

25         MR. MARTIN:  Your Honor, my only concern is the term

1    "judicial notice."  I usually see that, you know, as a federal

2    rule of evidence 201 context going to facts.  I guess I'm not

3    familiar with taking judicial notice of a pleading of some

4    sort.  Perhaps I'm just looking for a different change in

5    terminology.

6             THE COURT:  Let me ask Mr. Simpich if this would work

7    for him.

8             I will -- I will take your -- I will grant your

9    motion.  And what I mean by that is I will read it -- since it

10   just came in today, I haven't had a chance to read it -- I will

11   read it, I will consider it, and I will deal with it in the

12   opinion that I'm going to issue.  Does that work for you,

13   Mr. Simpich?

14            MR. SIMPICH:  As long as it's in the record, Your

15   Honor, that certainly works for me.

16            THE COURT:  All right.  Does that work for you,

17   Mr. Martin?

18            MR. MARTIN:  Yes, Your Honor.

19            THE COURT:  Anything else, Mr. Martin?

20            MR. MARTIN:  No thank you, sir.

21            THE COURT:  All right.  Well, I appreciate your

22   presentations this morning.  If we can be of further

23   assistance, let us know.  And I'll try to get this out to you

24   as soon as possible, and then y'all can -- if this is where I

25   end up, then y'all can head off to the Tenth Circuit.

1            All right.  Y'all have a good day.

2        (Court stood in recess at 11:31 a.m.)

Danna Schutte Everett
Official United States Court Reporter
333 Lomas Boulevard, Northwest
(505) 348-2283

```
 1                      C-E-R-T-I-F-I-C-A-T E

 2   UNITED STATES OF AMERICA

 3   DISTRICT OF NEW MEXICO

 4

 5       I, Danna Schutte Everett, RPR, CCR, CRR, Official

 6   Court Reporter for the State of New Mexico, do hereby

 7   certify that the foregoing pages constitute a true

 8   transcript of proceedings had before the said Court held

 9   in the city of Albuquerque, New Mexico, in the matter

10   therein stated.

11       In testimony whereof, I have hereunto set my hand on

12   this 24th day of June, 2014.

13

14                  _____

15                  DANNA SCHUTTE EVERETT
                    Registered Professional Reporter
16                  Registered Merit Reporter
                    Certified Realtime Reporter
17                  NM Certified Court Reporter #139
                    100 Church Street
18                  Las Cruces, New Mexico  88001
                    Phone:  (575) 528-1656
19                  Fax:  (575) 528-1656
                    dannadawn@comcast.net
20

21

22   July 12, 2013, Mocek vs. City of Albuquerque

23

24

25
```